[Civ. No. 4511.  Third Appellate District.—March 18, 1932.]

JACK DALTON, Respondent, v. B. JAMES CHAPMAN, Appellant.

Ray Manwell for Appellant.

Rich, Weis & Carlin for Respondent.

PLUMMER, J.—Plaintiff had judgment against the defendant in the sum of $430. From this judgment the defendant appeals.

Three hundred and thirty dollars of said judgment represents the value of certain sows taken by the defendant, found by the court to belong to the plaintiff, and $100 of said judgment represents the damages caused the plaintiff by the act of the defendant just stated.

The record in this case shows the following state of facts:

That on or about the twenty-third day of January, 1930, Mrs. J. J. Bast, J. H. Ware and Bessie B. Ware executed and delivered to A. B. Jackson a chattel mortgage covering the following described property, to wit: Sixty head of Poland-China hogs, some marked with the earmark ''V'', and not situate upon the ranch of Mr. and Mrs. J. H. Ware in Browns Valley, Yuba County, California. This mortgage was given to secure the payment of the sum of $167.42, with an advance clause therein not to exceed $500 in addition to the sum just mentioned. No action was brought to foreclose the mortgage. Thereafter, and in the month of August, 1930, A. B. Jackson commenced a claim and delivery action against Mrs. J. J. Bast, J. H. Ware and Bessie B. Ware, and pursuant to the directions given him by Jackson, the defendant in this action, B. James Chapman, constable of the Justice's Court of Marysville Township, in which said action was instituted, took possession of 22 hogs then on the Ware ranch. Thereafter the plaintiff in this action filed a third-party claim setting forth that he was the owner of 11 sows which the constable had so taken. The constable refused to deliver the sows to the plaintiff, whereupon this action was instituted.

The court found that the 11 sows so taken by the defendant B. J. Chapman were the property of the plaintiff in this action; were not covered by the chattel mortgage executed and delivered by Mrs. J. J. Bast, J. H. Ware and Bessie B. Ware, and delivered to A. B. Jackson; that the value of the sows at the time of the taking was the sum of $330, and

that by the taking of said sows a number of sucking pigs were caused to die, to the further damage of the plaintiff in the sum of $100.

The testimony of A. B. Jackson shows that prior to the institution of the claim and delivery action he had already received 46 of the 60 hogs covered by the chattel mortgage. The testimony further shows that two of the mortgaged hogs had died, and that one of the hogs died in transit to market; that the constable took, in addition to the hogs claimed by the plaintiff, 11 head. A simple matter of calculation shows that the number of hogs so taken by A. B. Jackson and sold, the 11 head taken by the constable, other than those claimed by the plaintiff, and the 3 head that had died, just equals the 60 head covered by the chattel mortgage. Jackson's testimony, on cross-examination, is as follows: "Q. Before you took the mortgage on the hogs or at the time you took the mortgage and as a part of the mortgage, the Wares owed you $167.42? A. Yes. Q. And they had some hogs out there that you told them you would advance feed to fatten hogs provided they gave you a mortgage, is that correct? A. Yes. Q. And that is why you put $500.00 extra in the mortgage for advances for feed? A. To protect the $167.18 trade acceptance. Been lapsed four months. Q. Didn't you expect to advance this feed? A. Not at that time, no. When they couldn't pay the account he came and asked for feed and I offered to advance them to protect the trade acceptance. Q. You took a mortgage and set out a note for $167.18, and the same mortgage provided there could be future advances of five hundred dollars? A. Yes. Q. You had in mind at that time, fattening these hogs, and selling the hogs and getting your money? A. Yes. Q. You were to furnish the feed? A. Yes. Q. And you did furnish feed? A. Yes, sir. Q. And you know they put some of the hogs up in the pen to fatten them? A. Yes, sir. Q. And you went out and got them with your truck and hauled them into town? A. At their request. Q. One of the loads was sold to the Valley Meat Company? A. Yes, sir. Q. That was twenty-three? A. Yes, sir. Q. And of that amount you received $455.35? A. Yes. Q. And then a little later on there was another bunch of hogs that was put up there and fattened? A. Twenty-three more. Q. And those hogs for which you furnished feed was sold to

the California Market? A. Yes, sir. Q. That was $387.15? A. Yes sir. Q. You actually received from the sale of the hogs they put up and fattened, those two shipments, which would make $842.50? (By the witness): That was the amount of the two payments. (By Mr. Rich): That was the two bunches of hogs you furnished feed to fatten? A. A portion of them. Q. What do you mean by that? A. That was one portion of the feed I furnished for those hogs. It wasn't all feed. Q. It was all covered by the mortgage? A. Yes. Q. That's all.''

The testimony of the Wares is to the effect that some years previously sows had been sold to the plaintiff Dalton, and that Dalton had cared for the same ever since, and that the 11 sows were not covered by the chattel mortgage, were not marked or described as the hogs included within the chattel mortgage, and were kept in separate fields. Upon this appeal it is claimed on the part of the appellant that section 3440 of the Civil Code applies, and that there was no change of possession at the time the hogs were sold to Dalton, and no change of possession since that date. The facts, however, as disclosed by the testimony which we have set forth, show that the action instituted by Jackson was that of one to recover mortgaged property, and the testimony set forth in the record is sufficient to support the conclusion of the trial court that the 11 sows taken by the defendant were not included within the chattel mortgage, from which it follows that section 3440 of the Civil Code has no application whatsoever.

The record shows that Jackson received the amount of $842.50 for the sale of hogs, which was considerably more than the amount of the mortgage, including the amount authorized to be advanced thereon. The chattel mortgage by its description did not purport to include even all the hogs owned by the mortgagors therein, nor did it purport to include all the hogs that were upon the Ware ranch at the time of the execution thereof. It simply purported to cover 60 head, and the record shows that Jackson obtained possession of 60 head, outside of those found by the court to belong to the plaintiff in this action. The action instituted by Jackson being simply one of claim and delivery, based upon the chattel mortgage, and the court having found

that the 11 sows were not covered by the chattel mortgage, it is evident that section 3440 of the Civil Code has no application, as the question of change of possession or continued change of possession of the 11 sows by Dalton was not, and could not be an issue. The only question the court had to determine was whether Jackson had obtained all the hogs covered by his chattel mortgage.

While there is some slight conflict in the testimony, there is sufficient evidence, as we have shown, to sustain the findings of the trial court that the 11 sows were not covered by the chattel mortgage, and were at all times the property of the plaintiff in this action.

The judgment is therefore affirmed.

Preston, P. J., and Thompson. (R. L.), J., concurred.